IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

MACHELLE TROTTER,               )
                                )
    Plaintiff,                  )
                                )
v.                              )    Case No. 3:15-CV-05013-NKL
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner             )
of Social Security,             )
                                )
    Defendant.                  )

**ORDER**

Plaintiff Machelle Trotter seeks review of the Administrative Law Judge's decision denying her application for Social Security Disability Insurance benefits. For the following reasons, the decision of the Administrative Law Judge ("ALJ") is reversed, and the case is remanded for reconsideration.

**I.   Background**

  **A.   Medical History**

Trotter alleges disability beginning on August 22, 2011. Her disabilities are primarily psychological. The record first indicates that Trotter received case management services for her psychological problems in January 2011. [Tr. 213, 215]. She complained that she had lost her job and things had been unstable for her. [Tr. 213]. On March 7, 2011, she underwent a psychosocial/clinical assessment and was diagnosed with major depressive disorder, recurrent; generalized anxiety disorder; alcohol abuse, in

1

remission; and cocaine abuse, in remission. [Tr. 218]. She was assigned a GAF score of 45, which indicated some serious symptoms or impairment in functioning with work, school, and housework. *Id.*

Trotter received no further treatment for her psychological symptoms until July 2012. She returned for treatment complaining of increased depression, anxiety, and symptoms associated with past trauma. [Tr. 305]. She was diagnosed with major depressive disorder, recurrent, severe without psychotic features; generalized anxiety disorder; and rule out posttraumatic stress disorder ("PTSD"). [Tr. 309]. The psychiatrist noted that her prognosis was fair. *Id.* In the next month and a half, Trotter participated in five therapy sessions with Dr. Chastity Arnold. [Tr. 300-04]. She complained that she felt "worthless" and "weak" because she had to depend on others, and noted that she experienced "panic" and "worrying" which prevented her from sleeping. [Tr. 304]. A week later she got a job at McDonald's and had a decrease of symptoms. [Tr. 303]. She was able to get to work by using public transportation, riding a bike, or getting a ride to work from friends. [Tr. 302]. On August 21, 2012, Trotter presented as tearful but hopeful throughout a session. [Tr. 300].

On September 4, 2012, Trotter underwent another psychosocial/clinical assessment. [Tr. 360]. She stated that she needed help with depression, was homeless and staying with her brother, needed a primary care doctor, needed to find a job, and felt overwhelmed. *Id.* She presented with good hygiene, appropriate clothing, normal speech, depressed and anxious affect, demon hallucinations, depression ranked at eight out of ten, and intellect slightly above average. She was diagnosed with PTSD; major

2

depressive disorder, recurrent; generalized anxiety disorder; alcohol abuse, in remission; cannabis abuse, in remission; and cocaine abuse, in remission. [Tr. 361-62]. She was encouraged to continue working toward finding work, get a primary care physician, and get help with depression. [Tr. 363].

On September 19, 2012, Trotter saw Dr. Arnold for therapy. She reported anxiety, trauma related flashbacks and memories, and that she had lost her job because the temp agency she worked for lost the contract they had for her banquet serving job. [Tr. 392]. On October 2, Dr. Arnold opined that Trotter was markedly limited in a number of capacities, including her ability to understand and remember detailed instructions; carry out detailed instructions; complete a normal workday and workweek without interruption from psychologically based symptoms; accept instructions and respond to criticism from supervisors; and get along with coworkers and peers, among others. [Tr. 438-39].

On October 15, 2012, nurse practitioner Robin Reitz completed a Medical Source Statement – Mental and opined that Trotter was markedly limited in her ability to maintain concentration for extended period; work in coordination with or proximity to others without being distracted; complete a normal workday and workweek without interruption from psychologically based symptoms; and set realistic goals or make plans independent of others, among others. [Tr. 445-46]. That same day, Trotter met with her case worker and reported that she was doing very well with no depressed or suicidal thoughts. [Tr. 386]. Nurse Reitz saw Trotter again three days later. [Tr. 384]. She reported her depression and anxiety were both at six out of ten. *Id.* Trotter had found a

3

job at Steak-N-Shake and thought she was doing much better. *Id.* Nurse Reitz increased her Effexor. *Id.*

On November 5, 2012, Trotter saw Dr. Arnold again and generally reported doing well. [Tr. 382]. Two weeks later she returned to see Dr. Arnold and again reported doing well. [Tr. 380]. She was working about 17 hours weekly. *Id.* She still experienced anxiety, had several nightmares in the preceding two weeks, and was disappointed by her inability to get a housing voucher. *Id.* On November 30 she was seen again and stated that in the previous week she had "more good days than bad." [Tr. 379]. She continued to do well through December and January. [Tr. 374-78].

At the end of January 2013, Trotter quit her job due to a confrontation with her manager. [Tr. 372]. On January 31, Trotter reported during a well-woman examination that she had little interest or pleasure in doing things, and she had been feeling down, depressed, or hopeless for several days. [Tr. 323]. On February 19, Trotter met with Dr. Arnold and reported that her symptoms were decreasing. [Tr. 369]. She was enjoying her job at a dry cleaner and had been working on PTSD workbook chapters to help with her symptoms. [Tr. 368-69]. On February 26, Trotter reported to her case worker that she was having difficulty managing her time with a full time job. [Tr. 366-67]. She was able to maintain her full time job for three weeks before quitting.

### B. ALJ Decision

The ALJ denied Trotter's request for disability benefits, concluding that she had the Residual Functional Capacity ("RFC") to engage in substantial gainful activity. The

4

ALJ concluded that despite Trotter's severe impairments of depression, anxiety, and PTSD, she retained the following RFC:

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple routine repetitive work with occasional interaction with supervisors, coworkers and the general public, be absent from work one day a month and be off task ten percent of the work time.

[Tr. 15].

In determining the RFC, the ALJ considered the medical evidence of the record, as well as Trotter's testimony at the administrative hearing regarding the extent of her symptoms. At the administrative hearing, Trotter testified that since the alleged onset date she had worked temporarily for a cleaner, at Norma's Kitchen, as a telemarketer, and at Steak-N-Shake. She testified that she is unable to work due to anxiety and a metal plate in her right wrist which left her with limited mobility in her hand. Trotter stated that she has problems with depression and anxiety every day, and that while her medications help, they do not make it go away. She said she has four to five bad days a week where she does not want to be around anyone or talk to anyone. Following this testimony, the ALJ questioned a vocational expert regarding Trotter's RFC. The vocational expert testified that a person with Trotter's RFC would be able to perform jobs such as a collator, cleaner – housekeeping, racker, and garment sorter. [Tr. 19].

## II.     Standard of Review

"[R]eview of the Secretary's decision [is limited] to a determination of whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the

5

Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. Discussion

Trotter argues that the ALJ erred in assigning only "some weight" to Dr. Arnold's opinion and "more than minimal, but less than substantial weight" to Nurse Reitz's opinion. Trotter contends that the ALJ mischaracterized the evidence and failed to explain how she actually considered the opinions.

### A. Dr. Arnold's Opinion

The record reveals that Dr. Arnold has been treating Trotter since at least July 2012. This treatment has been ongoing, though there was a period from February through June 2013 when Trotter did not receive any mental health treatment. Rather than according Dr. Arnold's opinion substantial weight, the ALJ concluded that Dr. Arnold's opinion deserved "some weight for finding the claimant is able to carry out simple instructions." [Tr. 17]. Trotter contends that the ALJ's explanation of this conclusion is deficient because she failed to explain the reasons for failing to incorporate many of Dr. Arnold's conclusions into the RFC despite giving the opinion some weight, and she failed to provide "good reasons" for discounting portions of the opinion.

A treating source's opinion must be given controlling weight if it is well-supported by medically acceptable diagnostic techniques and is not inconsistent with the other

6

substantial evidence in the record. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *see also Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). Even when it is inappropriate to accord the treating physician's opinion controlling weight in light of the record, the opinion "should not ordinarily be disregarded and [are] entitled to substantial weight." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). If the ALJ decides to discount a treating physician's opinion, she should "give good reasons" for her decision. *Dolph v. Barnhart*, 308 F.3d 876, 878 (8th Cir. 2002).

On October 2, 2012, after treating Trotter in excess of seven times, Dr. Arnold completed a Medical Source Statement – Mental, and opined that Trotter had the following limitations:

- Moderate Limitations: ability to remember locations and work-like procedures; ability to understand and remember very short and simple instructions; ability to maintain attention and concentration for extended periods; ability to work in coordination with or proximity to others without being distracted by them; ability to make simple work related decisions; ability to interact appropriately with the general public; ability to ask simple questions or request assistance; ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; ability to respond appropriately to changes in the work setting; and ability to be aware of normal hazards and take appropriate precautions.

- Marked Limitations: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; ability to travel to unfamiliar places or use public transportation; and ability to set realistic goals or make plans independently of others.

In the ALJ's decision, she stated that she found:

7

> [T]his opinion is internally inconsistent, as records show that during her tenure at Ozark the claimant began making independent plans, making decisions for herself, actively seeking, found full time work, and felt successful. The claimant improved her interaction skills even with family members whom she previously had problems with, and although she had conflicts with the manager at a part time job, she was able to walk away, controlling her temper, and called another manager to give notice. This treating source opinion is not entitled to controlling weight, as it is internally inconsistent and not fully supported by the record. However, the opinion is given some weight for finding the claimant is able to carry out simple instructions.

[Tr. 17]. While the ALJ addressed her reasons for discounting some of the limitations included in Dr. Arnold's opinion, the ALJ failed to address other limitations, such as the moderate limitations found by Dr. Arnold regarding Trotter's ability to maintain concentration, adhere to appropriate behavioral standards, and be aware of normal hazards and take appropriate precautions. The RFC did not include these limitations at all.

Most importantly, the ALJ failed to address Dr. Arthur's conclusion that Trotter is markedly limited in her ability to complete a normal work day and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Instead, the ALJ concluded that Trotter would need to be absent from work one day a month and be off task ten percent of the work time. The ALJ did not explain how she came to the conclusion that Trotter would be able to work subject to these temporal limitations. The ALJ's failure to address how this conclusion was reached and justify this limitation's deviation from Dr. Arthur's conclusion necessitates remand. In the absence of some medical opinion or

evidence to support the ALJ's conclusion regarding Trotter's ability to work subject to these specific temporal limitations, the conclusion is not supported by substantial evidence.

The ALJ also failed to give good reasons for discounting some portions of Dr. Arthur's opinion. For example, the ALJ concluded that Dr. Arthur's opinion that Trotter is markedly limited in her ability to set realistic goals or make plans independently of others is inconsistent with Trotter's ability to find full time work and feel successful. However, Trotter's subjective feelings of success are not necessarily indicative of an ability to maintain substantial gainful activity. Moreover, the record suggests that Trotter was only able to make goals and set plans when working with her case workers, nurse practitioner, and psychologist. Her case manager helped her obtain housing, obtain a primary care physician, and keep her appointments. There is little evidence in the record to support the conclusion that Trotter has been capable of making these strides on her own. *See Putnam v. Colvin*, 2014 WL 5320947, at *4-5 (W.D. Mo. Oct. 17, 2014) (concluding that the reasons given for discounting the doctor's opinion were not supported by substantial evidence when they were inconsistent with the evidence of the record).

The ALJ's conclusion that Trotter's ability to find work is indicative of her ability to maintain substantial gainful activity is also unsupported by the record. Substantial gainful activity requires the ability to work on a "regular and continuing basis" such as eight hours a day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, *1 (July 2, 1996). While Trotter proved herself capable of finding and

9

maintaining part time employment, both Dr. Arnold and Nurse Reitz indicated that Trotter has marked limitations in her ability to maintain a full time schedule. [Tr. 446, 439]. While Trotter was once able to obtain a full time job, she was only able to maintain this job for three weeks. Moreover, her ongoing attempts to find employment and multiplicity of part-time jobs suggest that Trotter wants to work, but may not be capable of doing so in a full time capacity. In order to discount Dr. Arnold's conclusion that Trotter is unable to work full time without significant interruptions from psychological symptoms, the ALJ needed to provide reasons for doing so which are consistent with the evidence of the record and account for the medical limitations opined by her physicians.

### B. Nurse Reitz's Opinion

On remand, the ALJ should also re-evaluate Nurse Reitz's opinion. The ALJ stated that this opinion was "afforded more than minimal, but less than substantial weight." [Tr. 18].

Nurse practitioners are not "acceptable medical sources" under the Social Security regulations. Despite being categorized as an "other source," opinions from nurse practitioners still must be evaluated as set out in 20 C.F.R. § 416.927(d). In considering these opinions, the ALJ is to consider (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) any other facts that tend to support or refute the opinion. 20 C.F.R. § 416.927(d).

Here, the ALJ concluded that the record "generally supports" Nurse Reitz's opinion, but did not explain with any specificity the weight which was actually accorded the opinion or describe how her opinion was incorporated into Trotter's RFC. The ALJ did not explain why Nurse Reitz's opinions regarding Trotter's limitations in regard to concentration and persistence, ability to maintain attention, ability to work in proximity to others without being distracted, and ability to complete a normal work day and work week without interruption were not included in the RFC. As Nurse Reitz's opinions are consistent with Dr. Arnold's evaluations and suggest that Trotter is unable to maintain substantial gainful activity, the ALJ should have addressed the credibility factors set out in 20 C.F.R. § 416.927(d) and her evaluation of the limitations opined by Nurse Reitz.

## IV. Conclusion

For the reasons set forth above, the ALJ's decision is reversed, and the case is remanded for reconsideration. On remand, the ALJ should reevaluate the weight assigned to Dr. Arnold's opinion. If the ALJ determines that some of the limitations opined by Dr. Arnold should be disregarded, the ALJ should provide specific, reasoned explanations for her decision not to incorporate these limitations. The ALJ should also reconsider Nurse Reitz's opinion and explain the weight given to her conclusions.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: October 2, 2015
Jefferson City, Missouri